United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SUNITA SETHI,

    Plaintiff,

  v.

SEAGATE US LLC GROUP
DISABILITY INCOME PLAN, and
LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON,

    Defendants.

                           /

No. C 11-06188 WHA

**ORDER GRANTING MOTION
FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this ERISA action challenging a denial of disability benefits, defendants move for summary judgment on the administrative record — meaning their internal claims administration records. Plaintiff opposes defendants' motion and seeks to augment the administrative record. For the reasons stated, defendants' motion for summary judgment is **GRANTED**.

## STATEMENT

Defendant Seagate US LCC Group Disability Income Plan is an ERISA plan that offers long-term disability benefits to Seagate US LLC's employees through an insurance policy issued by defendant Liberty Life Assurance Company of Boston, which is also the Plan's administrator.

**1. DISABILITY BENEFITS PAID TO SETHI.**

Plaintiff Sunita Sethi is a 49-year-old woman who worked for Seagate from 2002 to 2008 as a technician testing data disks. In 2007, Sethi had a car accident and received injuries to her back, arms, and neck. Sethi's treating physician, Dr. Arnold Spanjers, diagnosed her with

sprains of the neck, back, and shoulder, and possible nerve damage (AR CF1016). Due to her injuries, Sethi filed and received short-term disability for four months from defendants.

Afterward, Sethi returned to her job at Seagate as a technician testing data disks. Five months later, Sethi received notice that Seagate was planning to close operations in the United States. Upon receiving this notice, Sethi filed a second disability claim, reporting that her injuries from the 2007 accident relapsed. Liberty approved this second disability claim and thereafter paid short-term disability until 2010, when Sethi had been paid the maximum amount of short-term disability benefits available (AR CF062).

After reaching her limit for short-term disability, Sethi filed for long-term disability (AR CF027). Liberty approved long-term disability for 24 months after finding that Sethi was unable to perform her prior work as a technician testing data disks (AR CF315–17). Liberty determined that Sethi's position at Seagate, which involved "replacing heads of tester, replacing components on testers, troubleshooting problems with testers, performing preventative maintenance," required 'light' physical demand and Sethi was only able to perform at the lower category of 'sedentary' (AR CF321–27, CF951). Importantly, Liberty's approval of long-term disability for 24 months left unanswered whether Sethi could qualify for continuing long-term disability *after* 24 months under the Plan's "any other occupation" definition of disability. Specifically, it left unanswered whether Sethi could work at another occupation that required only 'sedentary' physical demand.

### 2. TERMINATION OF LONG-TERM DISABILITY BENEFITS AFTER 24 MONTHS.

In March 2011, after 24 months of receiving long-term disability, the Plan's policy required Sethi to show that she was unable to work at "any other occupation," not just her prior occupation, to continue receiving long-term disability (AR P06, CF133). Liberty determined that Sethi could find employment doing a variety of sedentary jobs and terminated Sethi's long-term disability (AR CF194–97). This decision was based on medical evaluations, clandestine surveillance, and vocational reports, discussed below.

Sethi stated in her disability application that she could sit for nine hours, stand for one to two hours, and walk twenty to thirty minutes per workday. She also stated that she left the house

2

once or twice per week (AR CF891–92, CF886).  Sethi's treating physicians, Drs. Spanjers and Thynn Lynn, noted in their reports that Sethi could work in a manufacturing job despite old injuries to her back, neck, and arm (*see, e.g.*, AR CF483, CF858, CF763, CF797–809).

Liberty also conducted clandestine surveillance of Sethi.  Liberty's surveillance discovered that Sethi worked for approximately three to four hours behind the counter of her family's Dollar Store, waiting on customers at the register, bending and twisting her body and neck to fill helium balloons.  She also drove around town buying take-out food and shopping (Dkt. No. 32).  The fact that Sethi was working at the Dollar Store was *inconsistent* with her statements to Liberty.  For example, in a call with Liberty's agent, Sethi expressly indicated that she did not work at the Dollar Store (AR CF22–23).  In one of her disability applications, Sethi wrote that she did not do any volunteer or paid work (AR CF892).

In 2010 and 2011, Liberty received independent review of Sethi's medical records by physicians Dr. Choon Rim and Dr. Eric Kerstman.  After reviewing her medical reports, speaking with her treating physicians, and reviewing the surveillance video, both physicians opined that Sethi was able to perform sedentary work that did not require lifting heavy objects and allowed for ambulation.  Both opined that Sethi had a wide range of motion with limited restrictions, and that Sethi's pain medication should not impose additional impairments from side effects (AR CF205–09,CF355–58, CF380–90).

Based on the medical evaluations, Liberty's vocational expert, Bernadette Cook, found that Sethi was able to perform sedentary work, such as duties of an information clerk, a receptionist, an order clerk, and a security guard badge checker.  Ms. Cook based her opinion on Sethi's education and vocational history, which included an associates degree in electronic technology from Ohlone College and almost twenty years of working in the high technology industry (CF304–07).

\*         \*         \*

Now, Sethi seeks review under 29 U.S.C. 1132 of Liberty's decision to terminate long-term disability benefits.  Defendants move for summary judgment.  After oral arguments,

Sethi was invited to submit a sur-reply to "new material that was put in the [defendants'] reply brief," and defendants were invited to submit a subsequent three-page brief (Dkt. No. 38 at 16).[*]

## ANALYSIS

Summary judgment is granted under Rule 56 when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A district court must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there is any genuine issue of material fact. *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007). A genuine issue of fact is one that could reasonably be resolved, based on the factual record, in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

In deciding a motion for summary judgment in an ERISA disability action, the district court must decide whether there are genuine issues of material fact, not whether there was a substantial or ample evidence to support the plan administrator's decision. If the plan administrator has left contested facts unresolved, the district court's review under Rule 56(c) should be limited to determining whether any of the facts in dispute are material. *Mongeluzo v. Baxter Travenol Long Term Ability Benefit Plan*, 46 F.3d 938, 942 (9th Cir. 1995).

### 1. SETHI'S REQUEST FOR FURTHER DISCOVERY.

A party requesting further discovery in opposition to summary judgment "must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment. Failure to comply with these requirements is a proper ground for denying discovery and

---

[*] Sethi inappropriately made arguments in her August 27 sur-reply brief beyond the scope allowed: response to new materials in defendants' reply brief. Such sandbagging will not be allowed. Therefore, section five of Sethi's August 27 brief is **STRICKEN** (Dkt. No. 39). Her arguments regarding medical review of the original physician's finding on appeal pursuant to 29 C.F.R. 2560.503-1(h)(3), (4) were not in her original opposition brief and are therefore waived. Moreover, this procedural error was harmless because all physicians agreed that Sethi was able to perform sedentary work; the error did not alter the substantive relationship between Sethi and Liberty. For reasons discussed below, even if this procedural error causes this Court's review to be de novo, summary judgment would still be granted for Liberty. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 971–74 (9th Cir. 2006) (en banc).

4

proceeding to summary judgment." *Family Home & Finance Center, Inc. v. Fed. Home Loan Mtg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citations omitted).

### A. The Plan's Policy.

Sethi speculates that the two copies of the Plan's policy contained in the administrative record are both incorrect (AR P1–33, CF128–60).

The Plan's policy was provided to Sethi during the administrative proceeding (AR CF128–60). At that time, Liberty represented that the copy provided was the most-current version of the policy (*see* AR CF127). Sethi did not object to the copy of the policy during the administrative proceeding. Now, Sethi is no longer satisfied with the copy of the Plan's policy contained in the administrative record. Sethi speculates that there are older versions of or amendments to the Plan's policy that are not included in the administrative record, and therefore requests further discovery to obtain the complete history of the Plan's policy. This request is denied.

Sethi has met none of the requirements for obtaining further discovery into the history of the Plan's policy. She has not presented any specific facts that she is hoping to obtain from further discovery, and therefore has not demonstrated how undiscovered facts might be essential to opposing summary judgment. Instead, Sethi relies on purported inconsistencies in the administrative record to suggest that there must be something material missing. All purported "inconsistences" are minor and immaterial, as discussed below.

Sethi points out that there are two different copies of the Plan's policy in the administrative record. This is true but immaterial. There is only one minor difference between the two copies (*compare* P1–33 *with* CF128–60). This difference, which is immaterial to the issue in this action, is attributable to the timing of when Sethi requested a copy of the Plan's policy. The copy appearing at pages CF128 through CF160 in the administrative record was the copy produced to Sethi during the administrative process at Sethi's request in 2010. The copy appearing at pages P1 through P33 in the administrative record was the effective policy in 2008, when Sethi initially filed her claim. Again, the sole difference between these two copies is immaterial to the issues in this action. Sethi cannot use this minor inconsistency to go on a

fishing expedition without setting forth specific facts she hopes to elicit from further discovery that would be material to summary judgment.

Sethi also argues that not all historical amendments of the Plan's policy are in the administrative record. While it is true that the administrative record does not contain every historical amendment to the Plan's policy, pointing to this fact alone is not sufficient to deny summary judgment. Again, further discovery is only warranted if Sethi has set forth specific facts she hopes to elicit from further discovery that would be material to summary judgment. This is nothing in the record to suggest that reviewing the history of amendments to the Plan's policy would materially alter issues on summary judgment.

It is worthwhile to note that Sethi has *not* argued that the Plan's policy was never provided to her during the course of her employment. Nonetheless, even if that was Sethi's argument, violation of ERISA's notice provisions do not give rise to substantive remedies absent extraordinary circumstances, such as bad faith, active concealment, or fraud. *Peralta v. Hispanic Business, Inc.*, 419 F.3d 1064, 1076 (9th Cir. 2005). Sethi has not contended that any such circumstances are present.

### B. Other Documents Not In The Administrative Record Are Immaterial.

Sethi argues that further discovery is required because the administrative record does not contain a copy of the summary plan description. The summary plan description, which is provided to employees as a summary of the Plan's policy, is irrelevant to the issues on summary judgment because its terms do not alter the Plan's terms. *CIGNA Corp. v. Amara*, 131 S.Ct. 1866, 1878 (2011). After oral arguments, the Court allowed Sethi to submit supplemental briefing on the summary plan description, which was produced with defendants' reply brief (Dkt. No. 36-3). After reviewing the summary plan description, this order finds that it is consistent with the terms of the Plan's policy. Notably, the summary plan description also stated that after 24 months of receiving long-term disability, the beneficiary is only disabled if she is "unable to perform the duties of *any* gainful occupation" (Dkt. No. 36-3 at 14) (emphasis added). As discussed below, this is consistent with the "any occupation" provision of the Plan's policy at the heart of this dispute. The summary plan description also stated that even if the beneficiary's

6

United States District Court
For the Northern District of California

1  physician continues to provide certification of disability, the benefits are "subject to the
2  maximum durations," such as the 24-month switch to "any occupation" (Dkt. No. 36-3 at 14).
3       Sethi also argues that Liberty's claim manual and training materials for its claim
4  adjustors should have been included in the administrative record. This order disagrees. Liberty
5  did not rely on its manual and training materials in deciding to terminate Sethi's benefits, and
6  therefore these documents were properly excluded from the administrative record. Liberty relied
7  on medical reports, vocational reports, a surveillance video, and the Plan's policy to terminate
8  Sethi's benefits. Liberty's manual and training materials are not specific to any one plan or
9  policy, and further discovery for these documents is not warranted in this action. (Suppl. McGee
10 Decl. ¶¶ 8–9). *See Conner v. Reliance Steel & Aluminum Co.'s Long Term Disability Plan*, Civ.
11 09-2487 (N.D. Cal. January 5, 2010) (White, J.).
12      To sum up, Sethi offers only speculation that additional documents could raise a genuine
13 dispute of material fact. Our court of appeals has held that merely speculation is insufficient.
14 Sethi has given no reason to believe that there exists evidence outside of the administrative
15 record showing that Liberty wrongfully terminated benefits.
16      **2.   APPLICABLE STANDARD OF REVIEW.**
17      District court review of ERISA disability-benefit denials is de novo unless the Plan gives
18 the administrator discretionary authority to determine eligibility for benefits. If the Plan grants
19 discretionary authority, then the administrator's decision is reviewed with more deference.
20 *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). The relevant provision of the Plan's
21 policy stated: "Liberty shall possess the authority, in its sole discretion, to construe the terms of
22 this policy and to determine benefit eligibility hereunder" (AR P025). The Plan's language
23 unambiguously conferred discretion on Liberty to determine eligibility for benefits.
24 Accordingly, this order holds that the abuse-of-discretion standard applies to this review.
25      Sethi argues that Liberty should be deferred less discretion because it both decides
26 entitlement to benefits and funds approved benefits. This structural conflict of interest deserves
27 consideration but is insufficient by itself to reject an abuse-of-discretion review. Here, there is
28 nothing in the administrative record to suggest that this structural conflict of interest played any

role in Liberty's decision. It is undisputed that Liberty paid disability benefits to Sethi for approximately three years. Sethi makes no specific arguments concerning conflict of interest. There is no evidence in the administrative record that a conflict of interest motivated the decision in question. *See Janette Corby v. Unum Life Insurance Company of America*, Civ 09-5890, at 7 (N.D. Cal. September 2010) (Alsup, J.)

### 3. LIBERTY DID NOT ABUSE ITS DISCRETION.

Under an abuse of discretion standard, our court of appeals has held that "[a]n ERISA administrator abuses its discretion only if it (1) renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court, after considering all the evidence, is left with the definite and firm conviction that a mistake has been committed." *Ibid*. The decision of an ERISA plan administrator will be upheld "if it is based upon a reasonable interpretation of the plan's terms and was made in good faith." *Ibid*.

Under the Plan's policy, Liberty may only award long-term disability benefits if the claimant is disabled under the following definition (AR P06, CF133):

> i. If the covered person is eligible for the 24 month Own Occupation Benefit, "Disability" or "Disabled" means during the elimination period and the next 24 months of disability the covered person is unable to perform all of the material and substantial duties of his occupation on an active employment basis because of an injury or sickness; and
>
> ii. After 24 months of benefits have been paid, the covered person is unable to perform, with reasonable continuity, all of the material and substantial duties of his own or any other occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity.

In other words, the Plan provides long-term benefits for the first 24 months of disability if the claimant is unable to perform his or her own, prior occupation; but after 24 months, the claimant must be unable to perform "any other occupation," meaning "unable to perform any occupation, with reasonable continuity, all the material and substantial duties of his own or any other

8

occupation for which he is or becomes reasonably fitted by training, education, experience, age and physical and mental capacity" (AR P06, CF133).

### A. Liberty Was Not Required To Consider Sethi's Station In Life Under The "Any Other Occupation" Provision.

Sethi argues that Liberty erred by not considering her station in life when finding that she was able to work in other occupations, such as an information clerk, a receptionist, an order clerk, and a security guard badge checker. Sethi's argument is unpersuasive.

The Plan's definition of "any other occupation" mimics broad language that has been approved by our court of appeals in *Pannebecker v. Liberty Life Assur. Co. of Boston*, 542 F.3d 1213, 1219 (9th Cir. 2008). In *Pannebecker*, our court of appeals held the plaintiff, who previously held a lucrative position as a department manager, was not disabled under a Plan's "any other occupation" provision because she was able to work as "customer service representative, [] information clerk, receptionist, data entry keyer, and general office clerk." Importantly, our court of appeals rejected the plaintiff's argument that the "any other occupation" provision limited occupations to those near a claimant's most recent salary or station in life. *Id.* at 1218–20. Therefore, in construing the Plan's "any other provision" in this action, Liberty was not required to consider Sethi's recent salary or station in life.

Sethi argues that our court of appeal's interpretation of a Plan's policy terms in *Pannebecker* is not controlling here because the Plan in *Pannebecker* was an Arizona plan while the plan here is a California plan. This argument is unpersuasive. In the interest of a uniform federal common law, state laws of insurance policy interpretation are preempted by ERISA. *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir. 1990). Thus, the *Pannebecker* court's interpretation of "any other occupation" controls and Liberty was not required to consider Sethi's most recent salary and station in life in its disability determination.

### B. The Administrative Record Supports Finding That Sethi Was Able To Work At Other Occupations.

In Sethi's joint case management statement filed before this Court on April 5, 2012, she stated that "Mrs. Sethi does not contend that she is unable to work in any occupation, but that the occupations in which she can work are not appropriate given her station in life and earnings

9

history" (Dkt. No. 15). This statement is a binding judicial admission. *Trinidad y Garcia v. Thomas*, 683 F.3d 952, 982 (9th Cir. 2012) (en banc). Not only was this court filing signed by plaintiff's counsel, but this particular statement at issue was specifically added to by plaintiff's counsel (Tucker Decl. Exh 1). Plaintiff does not argue otherwise in her opposition brief.

This judicial admission is sufficient by itself to find that Liberty did not err in determining that Sethi was not disabled under the Plan. Moreover, as discussed previously, the most recent medical reports in the administrative record all indicated that Sethi was able to perform sedentary work with occasional lifting, and that her injuries from her car accident had only a limited effect on her range of motion (*see, e.g.*, AR CF187, CF205–09, CF221, CF355–58, CF380–90).

Sethi's opposition brief has failed to point to any medical opinion in the administrative record suggesting that Sethi was not able to perform sedentary work. Sethi instead argues that when her disability benefits were terminated, "whether or not [she] could physically have done the unskilled entry level work as a 'badge checker' or 'receptionist' as found by Liberty's vocation report, no one could reasonably have expected her to undertake such work because she was scheduled for a six week rehabilitation program to start March 21" (Opp. 7). Although not entirely clear from her brief, Sethi appears to be arguing that even if she was not disabled (as defined under the Plan), she should still have received disability benefits because she was scheduled for additional physical therapy. This argument is unpersuasive. Sethi admits that the purpose of the physical therapy was not to enable her to perform sedentary work, which she was already capable of doing (Opp. 7). Sethi's treating physician, who recommended the physical therapy, was hoping that the physical therapy would enable her to perform *more than* sedentary work (*see* AR CF221). Liberty did not abuse its discretion when it terminated Sethi's benefits before she finished this physical therapy.

Sethi also argues that Liberty did not adequately consider her level of pain. Specifically, Sethi reported difficulty sleeping and had "abnormal posturing" due to pain. The nurse practitioner who examined Sethi found that she was experiencing increased pain because she stopped using her pain patches and discontinued physical therapy (AR CF187–88). Sethi did not

report that she was unable to perform sedentary work due to her pain, and Liberty did not abuse its discretion in finding that Sethi was able to perform sedentary work even with this pain assessment (AR CF181).

Sethi also argues that the vocational expert's report was unreliable because the expert did not interview Sethi. This argument is unpersuasive. Sethi submitted a "Training-Education-Experience Form" and a copy of her resume to Liberty for review (AR CF310–13). The vocational expert relied on Sethi's own submissions to determine whether she was qualified to work as a "information clerk, receptionist, order clerk, and security guard badge checker" (AR CF307). The vocational expert sufficient explained why Sethi would be qualified to work in these positions (AR CF304–07). The vocational expert also determined that these jobs were available on a full-time basis. Liberty did not abuse its discretion in relying on the vocational expert's opinion.

In her opposition brief, Sethi argues that her English is not good enough to perform the jobs of information clerk, receptionist, and order clerk. Sethi did not raise this issue up during the administrative process with Liberty. For an abuse of discretion review, this Court cannot consider evidence outside the administrative record that was not in front of Liberty when it decided to deny benefits. *Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan*, 349 F.3d 1098, 1110 (9th Cir. 2003). Therefore, Sethi's declaration that her English is poor cannot be considered. Moreover, even now, Sethi does not argued that her poor English would prevent her from working as a security guard badge checker, an occupation that the vocational expert opined Sethi could perform.

**CONCLUSION**

For the reasons stated above, defendants' motion for summary judgment is **GRANTED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 4, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11